UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------
SHAWN COLEMAN,

                Plaintiff,

v.

ANTHONY J. ANNUCCI, A. PRESTON, H.
WILKERSON, MARIE FELIX-JONES, and E.
BLACKMON,

                Defendants.
----------------------------------------------------------------

**MEMORANDUM & ORDER**
17-CV-5031 (MKB)

MARGO K. BRODIE, United States District Judge:

    Plaintiff Shawn Coleman, proceeding *pro se* and presently incarcerated at the Willard Drug Treatment Center located in Seneca County, New York ("Willard"), filed the above-captioned action on August 21, 2017 pursuant to 42 U.S.C. § 1983 against Defendants Anthony J. Annucci, A. Preston, H. Wilkerson, Marie Felix-Jones and E. Blackmon.[1] (Compl. at 1, Docket Entry No. 1.) Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is granted. For the reasons set forth below, the Court dismisses Plaintiff's claims against Annucci. Plaintiff's claims against Preston, Wilkerson, Felix-Jones and Blackmon may proceed.

**I. Background**

    The Court assumes the truth of the factual allegations in the Complaint for the purpose of this Memorandum and Order. On August 25, 2014, Plaintiff reported to a meeting with his parole officer at the New York State Division of Parole area office located at 92-36 Merrick

---

[1] The Complaint does not specify the first names of Defendants Preston, Wilkerson and Blackmon.

Boulevard in Queens County, New York. (Compl. at 3–4.) During the meeting with his parole officer,[2] Preston, whom Plaintiff alleges is the "Region Director" at the parole office Plaintiff reports to, was called into the room, and Preston "started to talk to [Plaintiff] in a very disrespectful manner." (*Id.* at 4.) Plaintiff was handcuffed for approximately two hours, after which time he was released and told to report for entry into a program assigned by Plaintiff's parole officer. (*Id.*) On August 29, 2014, Plaintiff reported to an Arms Acres drug rehabilitation center ("Arms Acres") to begin a treatment program.[3] Plaintiff attended Arms Acres for approximately four weeks, when he was informed by his parole officer that Arms Acres reported that Plaintiff tested positive during a drug test. (*Id.*) Plaintiff's parole officer ordered Plaintiff to take a second drug test, the results of which were negative. (*Id.*) Upon overhearing that Plaintiff previously failed a drug test, Preston asked Plaintiff's parole officer whether Plaintiff had been subsequently tested. (*Id.*) Plaintiff's parole officer responded that Plaintiff had been tested a second time, and that the results were negative. (*Id.*) Preston then informed Plaintiff that he would be transported to Rikers Island or Edgecombe Treatment Program ("Edgecombe") for forty-five days.[4] (*Id.* at 5.) Plaintiff asserts that Preston "violated [his] [d]ue [p]rocess [rights] . . . maliciously prosecuted [him] without cause, which resulted in [his] false arrest (wrongful confinement) and [he] was denied [his] [e]qual [p]rotection." (*Id.*)

---

[2] Plaintiff does not identify who his parole officer was at the time of the meeting.

[3] Arms Acres provides outpatient and inpatient addiction treatment. *See Arms Acres*, http://www.armsacres.com/ (last visited September 8, 2017).

[4] Plaintiff does not explicitly allege whether he was ultimately sent to Edgecombe or Rikers Island. However, the Complaint suggests that Plaintiff was sent to Edgecombe. (*See* Compl. at 5, Docket Entry No. 1 ("Region director Preston had nothing to substantiate a dirty urine in order to sanction me to Edgecombe.").)

On or about September 14, 2015, Plaintiff requested permission from his parole officer to go to Allentown, Pennsylvania, for job training. (*Id.*) When Plaintiff did not receive a response, he attended the job training and was offered a job. (*Id.*) Plaintiff thereafter informed his parole officer about the job offer. (*Id.*) The senior parole officer was informed,[5] and Plaintiff was penalized for not receiving permission in advance, prohibited from accepting the job offer, and required to report to his parole officer more frequently. (*Id.*) Plaintiff complied with the new reporting requirements for approximately five weeks. (*Id.*) At a subsequent parole meeting, Preston overheard a comment by the senior parole officer that Plaintiff left the state without permission, and ordered that Plaintiff be given an ankle monitor. (*Id.* at 5–6.) Plaintiff alleges that Preston thus "violated [his] [d]ue [p]rocess [rights] by imposing such sanction without a hearing or need" and also denied him "[e]qual [p]rotection" of the law. (*Id.* at 6.)

On or about December 2, 2015, Plaintiff and his fiancée went to the parole office to submit a transfer application in connection with Plaintiff's change of address to New Jersey. (*Id.* at 6.) Plaintiff was informed by the senior parole officer and Preston that his application would be denied because he and his fiancée were not married. (*Id.*)

Between January of 2016 and May of 2016, Preston visited Plaintiff's job on at least three occasions, "causing conflict with [Plaintiff] and [his] employer." (*Id.*) Plaintiff was "on a delivery truck" during Preston's first visit, and Preston informed Plaintiff's parole officer, Defendant Blackmon,[6] that Plaintiff was not working. (*Id.* at 6–7.) Upon reporting to the parole office, Plaintiff explained that he had been making deliveries, but was told he had to obtain a

---

[5] Plaintiff does not identify who the "senior parole officer" was at the time that this alleged incident occurred.

[6] It is unclear whether Blackmon is the parole officer referred to in any of Plaintiff's prior allegations in the Complaint.

3

letter of employment, "which started a chain of events jeopardizing [Plaintiff's] employment." (*Id.*) According to Plaintiff, Preston visited Plaintiff's job on two subsequent occasions. (*Id.*)

After Plaintiff was told to report to parole, Preston instructed Blackmon to "write out a special condition" prohibiting Plaintiff from driving. (*Id.*) Plaintiff's license was suspended at the time, but he had been "working to pay off all violation fines so [he] could obtain [his] license." (*Id.*) Plaintiff alleges that Preston's conduct violated his due process and equal protection rights, and that Blackmon failed to protect Plaintiff. (*Id.*)

On or about May 16, 2016, Plaintiff was arrested at his place of employment for an alleged parole violation after Blackmon and others allegedly observed Plaintiff operating a motor vehicle. (*Id.* at 8.) Plaintiff was incarcerated for approximately six months and lost his job. (*Id.*)

On or about February or March of 2017, after leaving work and before a scheduled parole meeting, Plaintiff asked Defendant Felix-Jones, his new parole officer, whether the meeting could be rescheduled because Plaintiff had to report to work in six hours. (*Id.*) After being given initial permission, Plaintiff was informed that Preston wanted Plaintiff to come in to the parole office. (*Id.*) Plaintiff was kept at the parole office from approximately 1:00 PM to 8:57 PM and alleges that he was held "maliciously" and forced to miss work. (*Id.* at 9.)

On or about April 10, 2017, Plaintiff reported to parole and informed Felix-Jones that he was applying for a job that required him to obtain his commercial driver's license. (*Id.*) After Felix-Jones denied Plaintiff's request to proceed in obtaining such license, Plaintiff spoke separately with Defendant Wilkerson, a senior parole officer at the office, who informed him that he should be permitted to obtain his commercial driver's license and that he could file a grievance for the denial. (*Id.*) According to Plaintiff, Wilkerson did not otherwise assist him. (*Id.*)

4

On or about April 20, 2017, Plaintiff was served a "violation of release report" signed by Felix-Jones and Wilkerson. (*Id.* at 10.) On June 5, 2017, "under the supervision of Anthony J. Annucci . . . and Preston," Plaintiff was subjected to a drug and alcohol test. (*Id.*) In connection with the test, "defendants . . . filed incomplete . . . documents which defendants utilized to find plaintiff guilty," in violation of Plaintiff's due process rights under the Fourteenth Amendment as well as "Article I, section 6 of [the] N[ew] Y[ork] State Constitution." (*Id.*) On June 5, 2017, Plaintiff was "sentenced by judicial sanction" to forty-five days at Edgecombe, and given a scheduled release date of August 10, 2017. (*Id.*) On July 20, 2017, Plaintiff was subsequently removed from Edgecombe and placed in a special housing unit at Ulster Correctional Facility ("Ulster"). (*Id.* at 11.) While at Ulster, Plaintiff was assaulted and "confined without cause, without a disciplinary or pending ticket." (*Id.*) On or about July 27, 2017, Plaintiff was reassigned to Willard, "per direction of Albany's decision (Anthony Annucci)." (*Id.*) Plaintiff was informed that he was being reassigned because, "through correspondence dated July 28, 2017 (Subject) (Amended Decision Notice)," his "parole revocation was amended" unlawfully without a hearing. (*Id.*)

Plaintiff seeks $2,500,000 in compensatory damages against the defendants "in their official capacities" and also seeks $1,000,000 in punitive damages "in their individual capacities."[7] (*Id.* at 12.)

---

[7] While the Court does not at this stage address Plaintiff's claims as to the remaining Defendants, the Court notes that while a suit for damages against a state official acting in his individual capacity is permitted for section 1983 claims, compensatory damages against a state official acting in his official capacity are barred by sovereign immunity. *See Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) ("The Eleventh Amendment bars the award of money damages against state officials in their official capacities."); *see also Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006).

## II. Discussion

### a. Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the court must screen "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and "dismiss the complaint or any portion of the complaint," if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. 1915A; *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d. Cir. 2007). Similarly, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas*, 480 F.3d at 639.

### b. Plaintiff fails to state a claim against Annucci

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or

constitutional rights. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted).

It is well established that "[a] defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)); *Richardson*, 347 F.3d at 435 ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (citations and internal quotation marks omitted)). Instead, "to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases). As the Second Circuit has stated, a supervisory defendant's personal involvement can be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (emphasis omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Here, the Complaint fails to allege facts suggesting Annucci's personal involvement in any

7

violation of Plaintiff's rights. Plaintiff alleges that on June 5, 2017, he was unlawfully subjected to a drug and alcohol test, which took place "under the supervision of" Annucci. (Compl. at 10.) However, as noted above, liability premised solely on a theory of *respondeat superior* is insufficient to state a claim under section 1983. *See Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015); *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). Moreover, Plaintiff's allegation that he was reassigned from Edgecombe to Willard "per [the] direction of Albany's decision (Anthony Annucci)," (Compl. at 11), similarly cannot support a section 1983 claim against Annucci. While supervisors may in some instances be considered direct participants of constitutional violations if they authorize or order such violations, *see Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014), the Complaint fails to allege facts supporting the allegation that Annucci directed any unlawful conduct and was thus personally involved for purposes of section 1983 liability.[8] *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." (citations omitted)); *see also Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) ("[W]hat we have meant by using phrases such as 'direct participation' as a basis of liability is personal participation by one who has knowledge of the facts that rendered the conduct illegal." (citation omitted)); *Holland v. City of New York*, 197 F. Supp. 3d 529, 550 (S.D.N.Y. 2016) ("Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." (quoting *Kee v. Hasty*, No. 01-CV-2123, 2004 WL

---

[8] In addition to the lack of allegations supporting Annucci's direct participation, Plaintiff fails to plead facts suggesting that any of the other factors noted in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), discussed *supra* at 7, apply to establish Annucci's personal involvement.

807071, at *12 (S.D.N.Y. Apr. 14, 2004))); *Murphy v. Goord*, 445 F. Supp. 2d 261, 264 (W.D.N.Y. 2006) (dismissing a claim alleging that an assault "was directed and/or tolerated, and/or encouraged by the wrongful practices of defendants" because "[i]f that were sufficient to state a claim, 'supervisory officials would automatically be subject to suit (if not liability) every time one of their subordinates committed a constitutional violation.'" (quoting *Houghton v. Cardone*, 295 F. Supp. 2d 268, 276 (W.D.N.Y. 2003))); *Davis v. Cty. of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) ("A complaint that essentially regurgitates the relevant 'personal involvement' standard without offering any facts indicating that, or how, an individual in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal." (citing *Houghton*, 295 F. Supp. 2d at 276)).[9]

### III. Conclusion

For the foregoing reasons, Plaintiff's claim against Annucci is dismissed pursuant to 28 U.S.C. § 1915A(b)(2) and 28 U.S.C. § 1915(e)(2)(B)(iii). No summons shall issue against

---

[9] The Complaint also contains a reference to Article 1, section 6 of the New York Constitution, which Plaintiff alleges was violated when "defendants . . . filed incomplete . . . documents which defendants utilized to find plaintiff guilty." (Compl. at 10.)
To the extent Plaintiff seeks to assert a violation of his state constitutional due process rights as the basis for Annucci's liability, such a claim cannot be maintained where, as here, the factual allegations underlying any such claim are identical to the allegations of Plaintiff's section 1983 claim, which provides adequate remedies for the alleged violations. *See Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) ("The New York State Constitution provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." (citing *Brown v. State of New York*, 89 N.Y.2d 172, 192 (1996))); *see also Gilmore v. Bouboulis*, No. 15-CV-0686, 2016 WL 4532146, at *9 (N.D.N.Y. Aug. 29, 2016) (collecting cases dismissing New York state constitutional claims based on factual allegations identical to federal claims, or where remedies were available under federal law); *Lee v. Corneil*, No. 13-CV-8359, 2016 WL 1322444, at *5 (S.D.N.Y. Apr. 1, 2016) (dismissing state constitutional claims because "[a]ctions for damages at common law and under § 1983 are both considered adequate alternative remedies that preclude the assertion of a claim for damages under the state Constitution" (quoting *Biswas v. City of New York*, 973 F. Supp. 2d 504, 522 (S.D.N.Y. 2013))). Therefore, to the extent Plaintiff seeks to predicate his claim against Annucci on a violation of the state Constitution, such claim similarly fails.

Annucci, and the Clerk of Court is directed to amend the caption to reflect Annucci's dismissal from this lawsuit. Plaintiff's claims against Preston, Wilkerson, Felix-Jones and Blackmon may proceed. The Clerk of Court is directed to issue summonses to those Defendants, and the United States Marshals Service is directed to serve the Complaint, this Memorandum and Order and the summonses on Preston, Wilkerson, Felix-Jones and Blackmon.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

\_\_\_\_\_s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: December 28, 2017
      Brooklyn, New York